```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

UNITED STATES OF AMERICA,      *

vs.                            *
                                         CASE NO. 4:13-CR-13 (CDL)
TROY DEAN WHITEHURST,          *

     Defendant.                *
_____
```

O R D E R

Defendant has filed a motion to suppress evidence seized during two searches of his property (ECF No. 20). The first search involved an alleged warrantless inventory search of his vehicle subsequent to the impoundment of the vehicle after Defendant was arrested during a traffic stop for violating the Georgia mandatory vehicle insurance law. The second search involved the search of his home and outbuildings on his property pursuant to a search warrant issued by a local magistrate judge. The warrantless search of his vehicle yielded various gardening materials. The search of the outbuildings on his property revealed marijuana plants and evidence of a marijuana grow operation. Defendant was subsequently indicted for manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He now seeks to have the items seized during the two searches suppressed because both searches violated his rights under the Fourth Amendment. Having received evidence at

an evidentiary hearing on Defendant's motion to suppress and with the benefit of oral argument and written briefs, the Court denies Defendant's motion. This ruling is based on the following factual findings and conclusions of law.

FACTUAL FINDINGS

After dropping his daughter off at school, Defendant was pulled over for speeding. When the officer ran the vehicle license plate, she learned that the vehicle was registered to Defendant's wife and that there was no insurance on the vehicle. As she questioned Defendant while he was still inside the car, she smelled an odor of unburned marijuana. She also detected a chemical smell from inside the vehicle which appeared to be some type of fertilizer material. She saw gardening materials in plain view inside the vehicle. When she asked Defendant about the marijuana smell, he said he had smoked some earlier. He explained that the gardening materials belonged to his wife, and while he was still in his vehicle, he admitted to the officer that there was marijuana in the vehicle and consented to a search of the vehicle. Defendant was then removed from the vehicle and arrested for failure to have insurance on the vehicle.

The officer subsequently searched the vehicle at the scene based on Defendant's consent and found 37 grams of what appeared to be freshly cut marijuana in a sock under the front passenger

seat.  She also observed the gardening materials that she had previously noticed in plain view.  She seized the marijuana but left the gardening materials in the vehicle.

Pursuant to standard policy for cases in which someone is arrested for having no insurance on a vehicle, the officer called a wrecker to have Defendant's vehicle towed to the wrecker service lot.  Under department policy, the vehicle would remain impounded at the wrecker lot because the city did not have a separate impoundment lot.  The officer notified her chief of what she had found, and they contacted an agent with the Pataula Drug Task Force, which was a multi-county task force that operated under the auspices of the Georgia Bureau of Investigation.  The drug investigation was then turned over to the Task Force, and they assumed responsibility for the vehicle.

The Task Force agents searched the vehicle at the impoundment lot without a warrant.  They did not believe a warrant was necessary because they considered their search of the vehicle to be an "inventory search."  During that search, they discovered and seized the gardening materials that had been previously observed by the officer who conducted the traffic stop.  At the evidentiary hearing on Defendant's motion to suppress, the agent who conducted the search acknowledged that the purpose of the search was to locate evidence that could be

used to pursue drug charges against Defendant.  It was not a true "inventory search."

The agent who was in charge of the investigation for the Task Force was familiar with Defendant, having encountered him approximately four years earlier during a marijuana manufacturing investigation in Terrell and Randolph Counties. Although Defendant was never charged in that investigation, he was suspected by law enforcement to have been involved in the illegal growing of marijuana.  Based on the freshly cut marijuana and gardening materials found in Defendant's vehicle and his previous knowledge of Defendant, the agent sought and obtained a search warrant from the local magistrate for a search of Defendant's residence in Clay County, Georgia and any outbuildings and vehicles on that property.  In his affidavit relied on by the magistrate judge, the agent stated that the following established that probable cause existed to believe that marijuana was likely present on the property to be searched: (1) within the past four years, the agent was involved in an investigation that revealed that Defendant was "involved with Johnny Hansel in an indoor and outdoor marijuana grow operation in Terrell and Randolph Counties[, and d]uring this investigation there [were] approximately 1,200 marijuana plants recovered from several different locations in Terrell and Randolph Counties and numerous assets used to help cultivate

4

marijuana;" (2) marijuana was found in a sock in Defendant's vehicle; and (3) "numerous products commonly used to cultivate marijuana were recovered" from Defendant's vehicle, including "bloom enhancer, fertilizer refill pellets, head lamp and mosquito net." Mot. to Supplement Government's Resp. in Opp'n to Def.'s Mot. to Suppress Ex. 1, Aff. for Search Warrant 1-3, ECF No. 25-1. Based on these statements in the agent's affidavit, the magistrate found probable cause to believe that evidence of an indoor and/or outdoor marijuana grow operation likely existed on the property to be searched, and she issued a search warrant.

The search warrant was executed, and the following evidence was discovered and seized: (1) ninety marijuana plants; (2) five trash bags full of marijuana; (3) nine Sun System grow lights; (4) six Sun System light bulbs; and (5) four inverters. Defendant seeks to suppress this evidence claiming that the search violated the Fourth Amendment.

## CONCLUSIONS OF LAW

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. There were three searches in this case—the warrantless search of Defendant's vehicle at the scene of the traffic stop, the warrantless search of Defendant's vehicle while it was

5

impounded, and the search of Defendant's residence and outbuildings on that property pursuant to the search warrant. The Court addresses each of these searches in turn.

Preliminarily, the Court notes that there is no dispute that the officer had probable cause to stop Defendant for speeding. Therefore, the traffic stop did not violate the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 661 (1979). Defendant also has not seriously challenged the officer's contention that Defendant admitted at the scene that marijuana was located inside the vehicle and that he consented to the search of his vehicle. The present record supports the conclusion that Defendant's consent was not coerced and was not merely a function of acquiescence "to a claim of lawful authority," but that the consent was given "freely and voluntarily." *See Florida v. Royer*, 460 U.S. 491, 497 (1983). And no legitimate argument exists that the officer was unjustified in seeking consent. *See Ohio v. Robinette*, 519 U.S. 33, 35-38 (1996) (holding that if a lawful traffic stop has been made, the police may request consent to search the vehicle even after the purpose of the stop has been accomplished and without announcing that the driver is "free to go"). Based on the foregoing, the Court finds that the search of the vehicle at the scene of the traffic stop was not unreasonable and did not violate the Fourth Amendment.

6

After the vehicle was towed to the wrecker service lot to be impounded because of the lack of insurance on the vehicle, agents from the drug Task Force purportedly conducted an "inventory search" of the vehicle. Inventory searches are permissible under the Fourth Amendment, but they must be done with the purpose of inventorying items in the vehicle and not for the purpose of looking for evidence to support a criminal charge. *See United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990) ("An inventory search is not a surrogate for investigation . . . ."). At the evidentiary hearing on Defendant's motion to suppress, the agent who conducted the "inventory search" candidly acknowledged that the primary purpose of the search was to try to find evidence that could be used in support of a drug charge against Defendant. Accordingly, that search was not a reasonable inventory search. The Government has made no argument that the consent that Defendant gave to search his vehicle at the scene carried over to the search of his vehicle at the impoundment lot and authorized the seizure of the items discovered during the second search. The Court finds it unnecessary to address that issue because the primary gardening items that were seized from the vehicle during the constitutionally suspect inventory search were actually observed by the officer at the scene when she conducted the consent search. And that officer relayed that

7

information to the Task Force agent who took over the drug investigation. Consequently, even if the seizure of those gardening materials violated the Fourth Amendment and even if the actual items must be suppressed, the Court can conceive of no reason why their presence in the vehicle could not have been communicated to the magistrate in support of the search warrant.

Defendant next argues that the search warrant issued by the magistrate was invalid. Defendant first contends that the agent provided misleading information to the magistrate. Defendant argues that the agent did not inform the magistrate as to exactly when he had investigated Defendant previously, but instead simply stated it was within the last four years. The court finds that no evidence was presented that this statement was false or misleading. Defendant also argues that the agent's statements regarding Defendant's prior criminal history were misleading, but the evidence at the hearing confirmed that the history stated in the affidavit was accurate, and the parties have stipulated that the magistrate did not rely on that information in her evaluation of probable cause. Notwithstanding the weakness of this evidence, Defendant was permitted at the evidentiary hearing to explore the alleged falsity of the agent's statements. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) (explaining circumstances entitling defendant to evidentiary hearing to challenge alleged falsities

8

in affidavit supporting search warrant). But he failed to establish that the agent knowingly and intentionally made a false statement in his affidavit or made a false statement with reckless disregard for its truth, which false statement was necessary to the finding of probable cause. Therefore, this attack on the search warrant fails.

Defendant's strongest argument to invalidate the search warrant is that the factual evidence relied on by the magistrate in finding probable cause to believe that evidence of illegal drug activity would be found at Defendant's residence was insufficient. The parties stipulated at the hearing that the only probable cause evidence contained in the affidavit that was relied on by the magistrate was the following: (1) within the past four years, the agent was involved in an investigation that revealed that Defendant was "involved with Johnny Hansel in an indoor and outdoor marijuana grow operation in Terrell and Randolph Counties[, and d]uring this investigation there [were] approximately 1,200 marijuana plants recovered from several different locations in Terrell and Randolph Counties and numerous assets used to help cultivate marijuana;" (2) marijuana was found in a sock in Defendant's vehicle; and (3) "numerous products commonly used to cultivate marijuana were recovered" from Defendant's vehicle, including "bloom enhancer, fertilizer

9

refill pellets, head lamp and mosquito net." Aff. for Search Warrant 1-3.

The Court must employ a realistic and commonsense approach that gives reasonable deference to the magistrate in her probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). A magistrate issuing a search warrant is required "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Miller*, 24 F.3d at 1361 (quoting *Illinois v. Gates*, 462 U.S. at 238) (internal quotation marks omitted). Determining whether probable cause exists involves "factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

In this case, the magistrate knew that Defendant had marijuana in his vehicle, that he had materials that were commonly, but not exclusively, used to grow marijuana, and that an experienced narcotics agent had investigated a marijuana grow operation in Terrell and Randolph Counties no more than four

years prior with which Defendant was involved in some way.[1]  The Court is convinced that the mere presence of the relatively small quantity of marijuana in Defendant's vehicle was not enough to give rise to a fair probability that Defendant was growing marijuana on his property.  The Court also finds that it is a close call as to whether the presence of a relatively small quantity of marijuana along with gardening materials that could be used to grow marijuana but could also be used to grow marigolds would be sufficient to establish probable cause that Defendant was growing marijuana on his property.  And the Court is concerned about the lack of specificity regarding the agent's statement that within the last four years, he was involved in an investigation of a marijuana grow operation in which Defendant was "involved."  Aff. for Search Warrant 2.  The implication from the affidavit is that Defendant was connected to the grow operation in some material way, but the affidavit does not spell that out.  The affidavit also does not specify exactly when the investigation occurred, thus fueling Defendant's argument that even if the investigation were theoretically relevant to a probable cause determination, it was stale and should not be considered.  *See United States v. Lopez*, 649 F.3d 1222, 1246

---

[1] Defendant's home, the location of the search, is in Clay County. Clay County is west of Randolph County.  Clay's eastern border is contiguous to Randolph's western border.  Terrell County is one county over and east of Randolph County.  Terrell's western border is contiguous with Randolph's eastern border.  These three counties are part of the same southwest Georgia rural community.

(11th Cir. 2011) (holding that in order to obtain search warrant government must reveal facts that make it likely the items sought are in that place "at the time the warrant issues"). The Government responds that the gardening materials in the vehicle support a conclusion that the growing operation is ongoing and reminds the Court that there is no "talismanic rule which establishes arbitrary time limitations," and each case must be decided on its unique facts. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).

Defendant also argues that the magistrate did not have sufficient facts to determine that there was a nexus between the suspected illegal activity and the place to be searched. But an argument could be made that it would not be unreasonable to conclude that if Defendant were growing marijuana, he was likely doing so on his property. Common sense supports this conclusion.

Based on the present record, a close question exists as to whether when all of these circumstances are considered in their totality from a commonsense perspective and when reasonable deference is given to the decision of the neutral and detached magistrate, the magistrate had a sufficient basis for concluding that there was a fair probability that contraband or evidence of a marijuana grow operation would be found in the areas to be searched pursuant to the search warrant. The Court, however,

does not have to answer this question definitively. Even if the search warrant was not sufficiently supported by probable cause, the evidence seized may not be excluded if the officers obtained the search warrant in good faith and acted reasonably in obtaining the warrant and executing it. *United States v. Leon*, 468 U.S. 897, 920-21 (1984).

The Supreme Court in *Leon* established a good faith exception to the general rule that evidence obtained in violation of the Fourth Amendment should be excluded from consideration of a defendant's guilt. *Id.* Finding that the primary purpose of the exclusionary rule is to deter unlawful police misconduct, the Court explained that when officers have engaged in objectively reasonable law enforcement activity and have acted in good faith when obtaining a search warrant from a judge or magistrate, no legitimate purpose is served by excluding evidence obtained from that good faith conduct. *Id.* at 919-20. The Eleventh Circuit has described the limited circumstances where this good faith exception to the exclusionary rule *would not* apply. Those circumstances are as follows: (1) the magistrate or judge issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the magistrate abandoned her judicial role; (3) "the affidavit supporting the warrant is so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the "warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal quotation marks omitted).  There is no evidence to suggest that the magistrate who issued the warrant in this case ever abandoned her role as a neutral and detached judicial officer.  It is also clear that the warrant was not so facially deficient that the officers who executed it could not reasonably rely on it to be valid.  It indicated that it was based on probable cause.  It described with particularity the place to be searched and the things to be seized.  And it contained the signature of a magistrate judge.  The Court also has found previously in this Order that the magistrate was not misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth.  Finally, as the Court has previously explained, the issue of whether sufficient probable cause existed to support the issuance of the warrant is a close call.  The Court certainly cannot conclude that the affidavit was so lacking in indicia of probable cause that belief in its existence was entirely unreasonable.

Defendant argues that since the officer who conducted the constitutionally suspect "inventory search" admitted that the purpose of that search was to look for illegal contraband, this admission establishes that the entire investigation leading up to the issuance of the search warrant was conducted in bad faith. The Court rejects this argument. Although the officer candidly admitted his subjective purpose during the search of the vehicle at the impoundment lot, it is clear that he had the right to enter the vehicle and retrieve the items had he done so for the purpose of inventorying those items. If he had properly inventoried the items in the vehicle, those items could have been lawfully seized and relied upon in seeking the search warrant. Therefore, while the officer's admission as to his subjective intent and his failure to properly inventory the items in the vehicle support Defendant's argument that the search of the vehicle violated the Fourth Amendment, the officer's subjective intent and search of the vehicle does not establish bad faith in seeking the search warrant, particularly given the fact that Defendant had previously consented to the search of the vehicle, most (if not all) of the items seized from the vehicle had previously been observed by the officer who made the traffic stop, and the officer who signed the search warrant affidavit was not the officer who conducted the flawed inventory search.

As explained by the Eleventh Circuit, "[t]he *Leon* good faith exception requires suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* (citing *Leon*, 468 U.S. at 926). The present record does not support such a conclusion. Accordingly, the Court finds that the *Leon* good faith exception to the exclusionary rule applies here, and Defendant's motion to suppress must therefore be denied.

## CONCLUSION

For the reasons explained in this Order, Defendant's Motion to Suppress (ECF No. 20) is denied.

IT IS SO ORDERED, this 21st day of February, 2014.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE